HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EMANUEL MCCRAY, | Case No. 3:25-cv-05660-RAJ |
| Plaintiff, | ORDER ON DEFENDANT MICROSOFT CORPORATION'S MOTION TO COMPEL ARBITRATIONS AND STAY CASE |
| v. | |
| MICROSOFT CORPORATION, | |
| Defendant. | |

## I.  INTRODUCTION

THIS MATTER comes before the Court on the Motion of Defendant Microsoft Corporation ("Defendant" or "Microsoft") to Compel Arbitrations and Stay Case (the "Motion," Dkt. # 11). Defendant filed the Declaration of Qi Wang, an Engineering Manager of the Security Division within Microsoft, in support of the Motion (the "Wang Declaration," Dkt. # 12). Plaintiff filed a response in opposition to the Motion (the "Response," Dkt. # 13), and Defendant thereafter filed a reply in support of the Motion (the "Reply," Dkt. # 23).

For the reasons set forth below, the Court **GRANTS** the Motion and **ORDERS** this case **STAYED** pending the outcome of arbitration proceedings.

ORDER - 1

## II. BACKGROUND

Plaintiff Emanuel McCray commenced this action *pro se* on July 28, 2025. Dkt. # 1. Plaintiff alleges that, on July 10, 2025, he received an email addressed to his Hotmail account—accessed through Microsoft's Outlook email platform—from an anonymous sender. Dkt. # 4 ¶¶ 14, 29. The email contained what Plaintiff describes as "criminal threats of extortion and blackmail" purportedly violative of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. *Id.* ¶¶ 37, 152. Plaintiff alleges that Microsoft failed to prevent the transmission of the email despite having "full knowledge" of the sender's criminal acts, and in fact took "affirmative steps to conceal the crimes" committed by the author of the e-mail by "flagging the email as 'junk'" and "scheduling [it] for deletion" after 30 days. *Id.* ¶¶ 165, 171. Plaintiff accordingly brings CFAA, negligence, and gross negligence claims against Microsoft, and seeks "damages, punitive damages, court costs, fees and such other relief as the Court deems just and proper, not to be less than $52 billion." *Id.* ¶¶ 183, 191, 203.

Defendant filed the Motion on September 29, 2025, arguing that Plaintiff's claims are "based on his use of Microsoft Outlook" and are therefore "subject to a mandatory arbitration provision" in the Microsoft Services Agreement ("MSA"). Dkt. # 11 at 5. The MSA, which was updated in September 2024, includes a Binding Arbitration and Class Action Waiver provision which provides, in relevant part:

> [I]f we [have a dispute], you and we agree to try for 60 days . . . to resolve it informally. If we can't, you and we agree to **binding individual arbitration before the American Arbitration Association ("AAA") under the Federal Arbitration Act ("FAA"), and not to sue in court in front of a judge or jury**. Instead, a neutral arbitrator will decide and the arbitrator's decision will be final except for a limited right of review under the FAA.

Dkt. # 12-1 at 22 (emphasis in original). The provision continues:

> The term 'dispute' is as broad as it can be. It includes any claim or controversy between you and us concerning the Services, the Services' or software's price, your Microsoft account, marketing, communications, your purchase transaction, billing, or these Terms, under any legal theory including contract, warranty, tort, statute, or regulation, **except disputes relating to the enforcement or validity of your, your licensors', our, or our licensors' intellectual property rights**.

*Id.* (emphasis in original). The Microsoft Outlook application and Outlook.com are both "Covered Services" under the MSA. Dkt. # 12-1 at 15, 28–29.

Microsoft states that "a user of the Microsoft account associated with emanuel.mccray@hotmail.com acknowledged the terms of the current MSA" in October 2024 by clicking on a pop-up notice notifying the user of the updated MSA. Dkt. # 11 at 6; *see* Dkt. # 12 ¶ 7; Dkt. # 12-4. An e-mail notification was also sent to the aforementioned account informing the accountholder that continued use of Microsoft's products and services would constitute agreement to the updated MSA. Dkt. # 11 at 6; Dkt. # 12 ¶¶ 5, 7–8, Dkt. # 12-3. According to Microsoft, the account associated with the emanuel.mccray@hotmail.com address "remains open," and Microsoft "has not received any notice that its owner elected to opt out of any MSA updates through the closure of the account." Dkt. # 11 at 6; Dkt. # 12 ¶¶ 7–8. Accordingly, Defendant seeks enforcement of the MSA under 9 U.S.C. § 2 and requests that the Court stay proceedings pending the outcome of the arbitration. Dkt. # 11 at 5.

Plaintiff filed the Response on October 1, 2025, arguing that this Court lacks jurisdiction to grant the relief sought by Defendant, that Microsoft waived its right to arbitrate under the MSA, and that the application of the MSA to Plaintiff's claims would render the MSA unenforceable. Dkt. # 13. Defendant filed the Reply on October 17, 2025, asserting that Plaintiff's arguments are "plainly wrong and border on frivolous" and reaffirming its request that the Court compel arbitration. *See* Dkt. # 23 at 5.

ORDER - 3

### III. LEGAL STANDARD

Because the FAA requires courts to direct the parties to arbitrate issues as to which an arbitration agreement has been signed, the FAA limits court involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation omitted). The party opposing arbitration bears the burden of showing that the agreement is not enforceable. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000); *Rodriguez de Quijas v. Shearson/Am. Express., Inc.*, 490 U.S. 477, 483 (1989).

When both elements exist, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration" on the issues they have agreed to arbitrate. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (italics in original). Under these circumstances, the court is required to stay the proceedings pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024).

### IV. DISCUSSION

The Court finds that the MSA's arbitration provision is valid and binding. Plaintiff consented to the updated MSA through his continued use of Microsoft's services following receipt of a notification e-mail and interrupt notice, and his claims fall within the scope of the arbitration provision.

**A.    The Court's Authority to Order Arbitration**

As an initial matter, Plaintiff contends that this Court lacks authority to order arbitration, arguing that its jurisdiction is instead "limited to immediately dismissing [the] complaint for Plaintiff's lack of standing . . . or denying Defendant's Motion and entering an initial case scheduling order pursuant to FRCP 16(b)." Dkt. # 13 at 5. Plaintiff

misunderstands the applicable procedure governing motions to compel arbitration in federal court. Pursuant to the FAA, district courts are tasked with making determinations as to the existence and scope of arbitration agreements for the purposes of adjudicating motions to compel arbitration. *Nguyen*, 763 F.3d at 1175. Contrary to Plaintiff's suggestion, this Court *may not* dismiss this case outright at this juncture if it ultimately concludes that both the elements enumerated under the FAA are present. Indeed, the Supreme Court recently clarified that, where a party "has requested a stay of the court proceeding pending arbitration," and the reviewing court finds that the dispute is subject to arbitration, the court "does not have discretion to dismiss the suit." *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024). Rather, the statute "compels" the court to stay the proceeding. *Id.* at 478. This Court therefore has authority to adjudicate Defendant's Motion and grant the requested relief.

### B. Existence of a Valid Arbitration Agreement

The party moving to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomm. Am.*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)) (internal quotation marks omitted). While Plaintiff does not appear to directly dispute the existence of a valid arbitration provision in the MSA, the Court will nonetheless address the issue, as the burden on the movant is "substantial" and Plaintiff suggests that the MSA is "unenforceable." *Id.*; Dkt. # 13 at 2.

Courts in this District have previously concluded that arbitration provisions in materially identical iterations of the MSA constitute validate arbitration agreements. *See, e.g.*, *J.A. through Allen v. Microsoft Corp.*, No. C20-0640-RSM-MAT, 2021 WL 1723454, at *3 (W.D. Wash. Apr. 2, 2021), *report and recommendation adopted*, No. C20-0640-RSM, 2021 WL 1720961 (W.D. Wash. Apr. 30, 2021); *Saeedy v. Microsoft*

*Corp.*, 757 F. Supp. 3d 1172, 1202 (W.D. Wash. 2024). Like the clause from the updated MSA before the Court today, older versions of the MSA contain language informing users that unresolved disputes will be subject to "binding individual arbitration before the [AAA] under the [FAA]," with the parties agreeing "not to sue in court in front of a judge or jury." *J.A. through Allen*, 2021 WL 1723454, at *3; *compare with* Dkt. # 12-1 at 22 (equivalent clause in September 2024 MSA). Earlier iterations of the agreement considered by courts have also included the same "notice" of the MSA, which warns users of its "**BINDING ARBITRATION CLAUSE AND CLASS ACTION WAIVER**" that "**AFFECTS YOUR RIGHTS ABOUT HOW TO RESOLVE ANY DISPUTE WITH MICROSOFT**", or that "**AFFECTS HOW DISPUTES ARE RESOLVED**[,]" and "directs review of the specific arbitration/class action waiver provisions." *Saeedy*, 757 F. Supp. 3d at 1190; *see also J.A. through Allen*, 2021 WL 1723454, at *3; *compare with* Dkt. # 12-1 at 2 (equivalent clause in September 2024 MSA).

As a more general matter, in determining whether an agreement to arbitrate exists, a district court applies ordinary state law principles governing the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The Court analyzes applicable contract law principles under Washington state law, as Plaintiff is a resident of Washington and Defendant is a corporation organized and existing under the laws of Washington State. *See* Dkt. # 11 at 9. To form a contract under Washington state law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219–21 (9th Cir. 2019). In addition to analyzing the terms of MSA itself, courts in this District have assessed Microsoft's practices of sending notification e-mails and "interrupt notices" to determine whether the requirements of notice and assent have been satisfied. In doing

so, courts have concluded that Microsoft's update e-mails and "interrupt notices" constitute adequate notice of and assent to the terms of the MSA's arbitration provision—particularly where users continue to use Microsoft's services following acknowledgment of the interrupt notice and/or receipt of the update e-mail. *See Saeedy*, 757 F. Supp. 3d at 1199–1202; *J.A. through Allen*, 2021 WL 1723454, at *3.

In this case, Microsoft has provided adequate evidence of Plaintiff's notice of, and assent to, the arbitration provision in the 2024 MSA. Microsoft provides the declaration of Qi Wang, a Microsoft Engineering Manager, attesting to Microsoft's practice of sending out email notices informing users of "the new MSA going into effect and includ[ing] a link to the new version of the MSA." Dkt. # 12 ¶ 5. Wang attests that "an email notice of the most recent 2024 MSA update was sent to emanuel.mccray@hotmail.com on August 17, 2024, at 6:03:39 AM UTC." *Id.* ¶ 7. Wang submits a "true and correct copy of the notice email sent out about the September 2024 MSA update," which informs the recipient that the update pertains to Microsoft products or services he or she uses, and continues:

> You can read the entire Microsoft Services Agreement here. You can also learn more about these updates on our FAQ page here, including a summary of the most notable changes. The updates to the Microsoft Services Agreement will take effect on September 30, 2024. If you continue to use our products and services on or after September 30, 2024, you are agreeing to the updated Microsoft Services Agreement. If you do not agree, you can choose to discontinue using the products and services, and close your Microsoft account before these terms become effective.

Dkt. # 12 ¶ 5; Dkt. # 12-3; *compare with Saeedy*, 757 F. Supp. 3d at 1199–1200 (citing materially identical language in prior MSA update e-mails). Wang attests that "Microsoft has not received any notice that the owner of the Microsoft account associated with the email address emanuel.mccray@hotmail.com elected to opt out of the 2024 MSA update

ORDER - 7

through the closure of the account." Dkt. # 12 ¶ 8; *compare with Saeedy*, 757 F. Supp. 3d at 1200 (noting that users' accounts remained open after receipt of the notification emails in finding assent to updated terms).

Additionally, Wang attests that Microsoft's interrupt notices "pop[] up on the user's screen stating that Microsoft has updated its MSA and provides a link to the full text of the MSA, labeled 'Learn More.'" Dkt. # 12 ¶ 6. Wang attaches an "example interrupt notice as it would appear on a user's screen." *Id.*; Dkt. # 12-4. The notice reads:

> We're updating our terms: As part of our effort to improve your experience across our consumer services, we're updating the Microsoft Services Agreement. We want to take this opportunity to notify you about this update.

Dkt. # 12-4. As with the interrupt notice in *Saeedy*, which is described in virtually identical terms, the notice appended to the Wang Declaration "provides a 'Learn more' hyperlink in blue text, offset from the white background and otherwise black text in the notice, and above a blue 'Next' button." *Saeedy*, 757 F. Supp. 3d at 1201; *see* Dkt. # 12-4. As with the plaintiff in *Saeedy*, Wang attests that Microsoft's records show that Plaintiff acknowledged the MSA update through an interrupt notice. *Saeedy*, 757 F. Supp. 3d at 1200; Dkt. # 12 ¶ 7 ("[T]he user of the Microsoft account associated with the email address emanuel.mccray@hotmail.com acknowledged the terms of the current MSA on October 18, 2024, at 11:08:58 AM UTC, by clicking on the 'interrupt notice' concerning the 2024 MSA update.").

ORDER - 8

Accordingly, Microsoft has provided adequate evidence of Plaintiff's notice of and assent to the current version of the MSA. As such, the Court concludes that a valid agreement to arbitrate exists.

### C. Scope of the Arbitration Provision

Plaintiff's claims also plainly fall within the scope of the 2024 MSA's arbitration provision. Plaintiff's complaint centers around the use of his Hotmail.com account—specifically, around the receipt of an objectionable email in his "Junk" folder. Dkt. # 4 ¶ 29. Plaintiff's Hotmail.com account, as Wang attests (and Plaintiff appears to acknowledge), is a Microsoft Outlook email account. Dkt. # 12 ¶ 2; *see also* Dkt. # 4 ¶ 14. Both Outlook.com and the Microsoft Outlook application are listed as "Covered Services" under the MSA. Dkt. # 11 at 11; Dkt. # 12-1 at 15, 28–29. Courts in this District have previously concluded that claims that "touch directly on [plaintiffs'] use of Microsoft accounts" or other "'Covered Services' under the terms of the MSA" fall within the "scope of the MSA and its arbitration clause." *Saeedy*, 757 F. Supp. 3d at 1207. Additionally, at least one court in this District has previously found that a plaintiff's claims arising from "alleged spam issues he experienced with his Hotmail account" are "rooted in the relationship [between the parties] created by the contract containing the arbitration clause." *Day v. Microsoft Corp.*, No. C13-478-RSM, 2014 WL 243159, at *3 (W.D. Wash. Jan. 22, 2014) (quoting *Johannsen v. Morgan Stanley Credit Corp.,* Case No. C11-1516-MCE-KJN, 2012 WL 90408, at * 4 (E.D. Cal. Jan.11, 2012)). Accordingly, the arbitration clause in the 2024 MSA encompasses Plaintiff's claims.

### D. Enforceability of Arbitration Provision

Plaintiff challenges the enforceability of the MSA's arbitration provision on the basis that its application to his claims would render it a "contract for an unlawful act, such as using a computer to engage in cyber-extortion, blackmail and defamation." Dkt.

# 13 at 3. In so arguing, Plaintiff appears to rely on his cause of action sounding in the the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. However, as Defendant correctly notes, there is no "CFAA exception" to the enforceability of arbitration agreements. *See* Dkt. # 23 at 7–8 (citing *Torbit, Inc. v. Datanyze, Inc.*, 2013 WL 572613 (N.D. Cal. Feb. 13, 2013); *Bridgetown Trucking, Inc. v. Acatech Solutions, Inc.*, 197 F.Supp.3d 1248, 1256 (D. Or. 2016); *Ferguson Enters., Inc. v. Hollenkamp*, 2015 WL 6126844, at *3 (W.D. Ky. Oct. 16, 2015)).

Additionally, as previously discussed, Plaintiff's claims clearly center around civil allegations arising out of Microsoft's purported mishandling of the anonymous email referenced in his complaint. These claims "touch directly" on Plaintiff's use of his Hotmail.com account, which is a Covered Service under the MSA and is therefore subject to its arbitration provision. *Saeedy*, 757 F. Supp. 3d at 1207. Plaintiff's arguments are therefore unavailing, and do not disturb this Court's finding that the MSA's arbitration provision is enforceable and binding and encompasses Plaintiff's claims.

E.      **Waiver of Right to Arbitrate**

Plaintiff argues that Microsoft waived its right to arbitrate by not responding to letters or other notifications he sent in the summer of 2023 related to Defendant's alleged "cyber vulnerabilities" and ongoing litigation. Dkt. # 13 at 3–4. As Microsoft notes, however, the MSA outlines the process for commencing arbitration as follows: first, the parties engage in the Notice of Dispute process, and if there is no resolution, an unsatisfied user should "submit the Demand for Arbitration form . . . to the AAA and mail a copy to [Microsoft]." Dkt. # 23 at 4; Dkt. # 12-1 at 22. The MSA makes clear that "sending a Notice of Dispute . . . only triggers a sixty-day period during which Microsoft and the [user] will attempt to negotiate a resolution." *Day*, 2014 WL 243159, at *4 (analyzing analogous arbitration provision in Windows licensing agreement). It

does not create a duty to respond that Microsoft must honor in order to avoid waiver of its right to compel arbitration. Moreover, Microsoft has not otherwise acted inconsistently with its right to move to compel arbitration; it filed this Motion promptly as its first appearance in this action. *See id.* at *3–4 (citing *Fisher v. A.G. Becker Paribas Incorporation*, 791 F.2d 691 (9th Cir.1986)). Nor has Microsoft's non-response prejudiced Plaintiff, who could have initiated an arbitration action following the expiration of the sixty-day window, and "chose not to, [filing] this district court action instead." *Day*, 2014 WL 243159, at *4.

Finally, Plaintiff suggests that this Motion was improperly filed because it "is not a motion cognizable under Rule 12." Dkt. # 13 at 4. This Court previously rejected this argument in its Order denying Plaintiff's Motion to Certify for Interlocutory Appeal Under 28 U.S.C. § 1292(b), observing that Courts in the Ninth Circuit have assessed motions to compel arbitration under Rule 12(b). *See* Dkt. # 30 at 8; *see also* Dkt. # 23 at 9 (collecting cases). As such, Plaintiff has not met his burden to identify any evidence of Microsoft's waiver of its right to arbitrate.

## V.    CONCLUSION

For all the foregoing reasons, the Court **GRANTS** the Motion and **STAYS** this case pending arbitration. Dkt. # 15. Pursuant to the language provided in the MSA's binding arbitration provision, the arbitration of all disputes will be administered by the American Arbitration Association. The Clerk of Court is directed to terminate all pending motions in this matter.

//
//
//
//

The parties are directed to advise the Court of the status of arbitration within **ninety (90) days** of this Order. If the parties fail to commence arbitration within **twelve (12) months** of this Order, the Court will dismiss the underlying claims and terminate the case. *See Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962–63 (9th Cir. 2007).

Dated this 12th day of January, 2026.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge